*NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARVIN MELVIN, | Civil Action No.: 10-2848 |
| Plaintiff, | **OPINION** |
| v. |  |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY |  |
| Defendant. |  |

**WOLFSON, United States District Judge:**

      Marvin Melvin ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff Disability Insurance Benefits and Supplemental Security Insurance Benefits under the Social Security Act ("Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal, Plaintiff contends that the substantial evidence in the Administrative Record ("AR") establishes eligibility for and entitlement to the benefits for which Plaintiff applied. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ"), at Step Four of the sequential process, erroneously found that Plaintiff could resume his employment as a security guard. After reviewing the administrative record, this Court finds that the ALJ's decision is based on the substantial evidentiary support required by 42 U.S.C. § 405(g). Therefore, the ALJ's decision is affirmed, and Plaintiff's appeal is dismissed in its entirety.

I. Overview

    A.    **Procedural History**

Plaintiff filed a Title II application for Disability Insurance Benefits and a Title XVI application for Supplemental Security Income on May 16, 2006. In both applications, Plaintiff alleged his disability began on September 6, 2005. The applications were initially denied on October 13, 2006 and again after reconsideration on April 23, 2007. After the denials, a timely request for hearing was filed. The hearing took place before ALJ Joseph Hilegas on August 11, 2008. The ALJ denied Plaintiff's application on September 22, 2008. Plaintiff next filed a Request for Review with the Appeals Council, but the council denied the request. Plaintiff subsequently filed the instant matter with the District Court.

    B.    **Background and Medical History**

Plaintiff claims he has been unable to work since June 10, 2007 due to hearing loss in his left ear, vertigo and headaches. Administrative Record ("AR"), 16, 25. Prior to the onset of his symptoms, Plaintiff worked briefly as a forklift driver for a furniture warehouse in 1991 and then as an apartment complex security guard from 1993 until he was fired in 2002. Id. at 102, 124. After Plaintiff's termination, he worked as an auto parts driver for Hamilton Mazda from April 2003 to April 2004.[1] Id. at 23, 102. Plaintiff was unemployed from April 2004 until his symptoms began in 2005. Id. at 101.

On September 30, 2005, Plaintiff was seen by Dr. Sgarlato-Inducci at Robert Wood Johnson University Hospital. Id. at 152. Plaintiff complained of a gradual decline in hearing sensitivity in his left ear. Id. Pure tone test results revealed normal hearing in the right ear, but

---

[1]    In Plaintiff's disability form, he reported that he worked from "04/03 – 04/04." Id. at 102. However, Plaintiff subsequently testified at the Administrative Hearing that he had not worked since 2002. Id. at 22. In either case, Plaintiff has not been employed since the alleged onset date of his symptoms.

2

mild to moderate conductive hearing loss in the left. Id. Dr. Sgarlato-Inducci concluded that Plaintiff would need amplification for his left ear. Id.

On October 4, 2006, Plaintiff was examined by Dr. Raja who confirmed via audiogram the prior diagnosis of mild conductive hearing loss in Plaintiff's left ear. Id. at 152-53. Dr. Raja recommended additional evaluation for the left ear. Id. at 153. Four days later, Plaintiff was evaluated by a state agency medical consultant, Dr. Acuna, who reaffirmed Dr. Raja's and Dr. Sgarlato-Inducci's diagnoses. Id. at 165. However, Dr. Acuna noted that Plaintiff's "allegation of an inability to hear instructions is not corroborated by the objective evidence regarding the degree of hearing loss." Id. at 166. Indeed, Dr. Acuna concluded that Plaintiff would only have problems hearing softer sounds from his left side and as such, should not work around concentrated noise. Id. at 165.

From January 5, 2007 onward, Plaintiff was seen by his family physician, Dr. Obuz, for hearing-related treatment.[2]  See id. at 173-99.  Though Dr. Obuz's handwritten notes are, at times, difficult to decipher, the notes indicate that Dr. Obuz referred Plaintiff for a hearing test in early 2007.  A hearing test was completed that June, which test results stated that hearing in his right ear was normal but his left ear displayed "profound mixed hearing loss." Id. at 189. Following the June 2007 test, Dr. Obuz conducted follow-up examinations in October and November of that year.

On May 12, 2008, Dr. Obuz completed an examination report form submitted to him by the State of New Jersey for work-related disability determination purposes.  See id. at 181.  In that report, Dr. Obuz indicated that Plaintiff's primary diagnosis was vertigo and that his other

---

[2]   The Administrative Record includes medical records from Dr. Obuz's office dating back to February 3, 2006.  These pre-February 3, 2007 records, however, do not reference Plaintiff's hearing condition.

3

diagnoses were (vesticular) labyrinth and migraines. See id. at 182. The report thereafter states that Plaintiff's conditions rendered him unable to perform full-time employment. Id.

Shortly thereafter, on July 15, 2008, Dr. Obuz completed a residual functional capacity questionnaire. In that questionnaire, Dr. Obuz observed that Plaintiff would occasionally need to take breaks during the workday and would miss four or more days of work per month due to his vertigo. Id. Specifically, Dr. Obuz responded to question 15(l), which queries:

> "Are your patient's impairments likely to produce "good days" and "bad days"?
>
> If yes, please estimate, on the average, how often your patient is likely to be absent from work as a result of the impairments or treatment:

Id. at 177. After responding "Yes" to the first half of the question, Dr. Obuz circles the "More than four times a month" option. Directly next to the "More than four times a month" choice, however, Dr. Obuz handwrites the word "daily." Elsewhere in the report, Dr. Obuz concluded that Plaintiff was able to walk without limitation but that he required a job that would permit him to shift positions (from sitting, standing, or walking) at will throughout the day and take unscheduled 12-15 minute breaks. Id. at 175-76.

Plaintiff appeared before the ALJ on August 11, 2008. Id. at 17. At the time of the administrative hearing, Plaintiff had been prescribed Meclizine for his dizziness and vertigo, as well as Metoprolol for depression. Id. at 26-27. Plaintiff was also taking Ibuprofen due to his headaches. Id. Plaintiff described his condition as a loss of hearing that caused intermittent episodes of vertigo and frequent headaches. Id. at 25, 27-28. Plaintiff testified that he loses balance for thirty to forty seconds at a time, several times a day, at which point he must either steady himself or sit. Id. at 25. In regards to his headaches, Plaintiff testified that they occur

roughly three times a day, but typically subside within half an hour of the ingestion of ibuprofen. Plaintiff also testified that he takes medication for depression. Id. at 27.

When asked about his day-to-day life, Plaintiff testified that each morning he takes his son to camp, walking a distance of a few blocks, before returning home to read or watch television. Id. at 24. Plaintiff also testified that he had just received a hearing aid a few days earlier that had improved his hearing and, according to his physician, should help with his vertigo and headaches.[3] Id. at 26. When Plaintiff was asked if he could perform a security job as he had done in the past Plaintiff conceded "that it could be done." Id.

The independent vocational expert ("VE"), Mitchell Schmidt, testified that "security officer is a light duty, semi-skilled" occupation with an exertional level of light and medium. Id. at 30. While the VE conceded that an individual's absence four days a month "would not be compatible work in the national economy," he also testified that, despite Plaintiff's condition, he could still perform "the full range of sedentary, unskilled work." Id. at 33.

### C.    The ALJ's Decision

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009.  Id. at 12. The ALJ then proceeded to apply the five-step process used to determine Plaintiff's disability status. Id. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 10, 2007, the amended alleged onset date. Id. At Step Two, the ALJ determined that Plaintiff had the following severe impairments: hearing loss in the left ear, with associated headaches and vertigo. Id. at 12. However, at Step Three the ALJ determined that, as Plaintiff's right ear was unaffected, Plaintiff

---

[3]    Plaintiff testified at the administrative hearing that the hearing aid had not yet had an impact on his condition. Id. at 26.

did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 12-13.

Thereafter, the ALJ proceeded to Step Four, where he determined that, despite Plaintiff's condition, Plaintiff still had the residual functional capacity ("RFC") to perform sedentary work so long as it does not require exposure to hazards. Id. at 16. The ALJ based his decision on the medical evidence in the record, which he determined did not support the conclusion that Plaintiff had any medical condition beyond loss of hearing in his left ear, vertigo and headaches. Id. at 12-13. The ALJ's decision was also based on the testimony of the VE, who stated that Plaintiff would be able to perform the "full range of sedentary, unskilled work." Id. at 33.

In addition to objective medical evidence and the VE's testimony, the ALJ considered a number of other factors, pursuant to 20 CFR 416.929(c). Id. at 14. The factors included: (1) Plaintiff's daily activities; (2) the location, duration, frequency and intensity of Plaintiff's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication the Plaintiff had taken to alleviate pain or other symptoms; (5) treatment, other than medication, Plaintiff had received for relief of pain or other symptoms; (6) any measures other than treatment Plaintiff had used to relieve pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. 250 C.F.R. § 404.1529(c); see Haftranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The ALJ concluded that an examination of these factors supported his initial determination that Plaintiff possessed the necessary RFC to perform sedentary work. Id. at 14. Plaintiff testified at the hearing that he walked his son a few blocks each morning before returning home to read or watch television. Id. Also, documentary evidence revealed that "just

prior to the amended alleged onset date, [Plaintiff] admitted that he prepared meals, shops and socializes, and that he has no difficulty paying attention or following instructions." Id. Furthermore, Plaintiff "was unable to identify factors that cause him to [lose] his balance or to indicate that it is positional in nature." Id. In addition, Plaintiff "admitted that his hearing had improved with the hearing aid, and that his doctors expect his other symptoms to subside as well." Id. In regards to the headaches, Plaintiff testified that ibuprofen was effective, typically causing his symptoms to subside within thirty minutes. Id. at 15. Although the ALJ acknowledged the credibility of "the intensity, persistence and limiting effects of [Plaintiff's] symptoms," the ALJ concluded that they did "not support a finding of disability." Id.

     As to the medical opinion evidence, the ALJ found Dr. Acuna's assessment of Plaintiff particularly persuasive. Id. Dr. Acuna determined that Plaintiff had "no exertional limitations but will have problems hearing softer sounds from this left side, and should not work around concentrated noise." Id. Dr. Acuna's conclusions were supported by Dr. Obuz, who determined that Plaintiff could walk without limitation and, similarly, could sit without limitation. Id. However, the ALJ noted that Dr. Obuz's conclusion that Plaintiff would need to miss work was inconsistent with both Plaintiff's own testimony and the concessions made in the documentary evidence. Id. By all accounts, Plaintiff's hearing in the left ear was "corrected with a hearing aid" and his hearing in the right ear was unimpaired. Id. In light of this evidence, the ALJ concluded that Plaintiff has "no significant limitation in his ability to hear." Id. In addition, the impartial VE testified that Plaintiff "can perform virtually the full range of sedentary work." Id. at 16. Thus, the ALJ found that Plaintiff possessed the RFC to perform "sedentary work that does not require exposure to hazards, but would need up to two unscheduled breaks per day, lasting for a few minutes each." Id.

As Plaintiff could perform sedentary work, the ALJ determined that Plaintiff was capable of performing past relevant work as a security officer. Id. Plaintiff's prior job only required him to "answer the phone, write incident reports, write a summary of what happened during his shift, and walk around the building." Id. The ALJ noted that Plaintiff would be sitting for seven to eight hours and would only walk for thirty minutes a day, well within his RFC. Id. Furthermore, Plaintiff's hearing, at least in the right ear, was sufficient to allow him to answer the phone. Id. at 15. Thus, the ALJ concluded that Plaintiff does not have a disability, as defined in the Social Security Act, from June 10, 2007 through the date of the ALJ's decision. Id. at 16.

## II.  Discussion

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186

F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

### B.     Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S.

at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to any listed impairment. 20 C.F.R. § 404.1520(a)(4) (iii). If the claimant demonstrates that his impairments are equal in severity to, or meet any listed impairment, the claimant has satisfied his burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. See 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at Step Four whether he retains the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141. If the claimant is able to perform his previous work, the claimant is determined to not be under a disability. 20 C.F.R. § § 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant

bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

    C.    **Plaintiff's Arguments on Appeal**

At the outset, the Court notes that Plaintiff does not dispute the ALJ's findings at Step Three of the disability evaluation. It is well established that Plaintiff bears the burden of presenting medical findings showing that his impairments meet or equal a listed impairment. See Bowen v. Yuckert, 482 U.S. at 146 n.5; Burnett v. Apfel, 220 F.3d 112, 120 n.2 (3d Cir. 2000). Here, the ALJ determined that Plaintiff's "hearing in the right ear is unaffected and… there is no evidence of disturbed function of the vestibular labyrinth, demonstrated by caloric or other vestibular tests." AR, 13. Thus, the ALJ concluded that Plaintiff failed to present medical findings showing that his impairments meet or equal a listed impairment. Id. at 12. As Plaintiff was not "conclusively presumed to be disable[ed], the evaluation proceed[ed] to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past." Bowen, 482 U.S. at 141. Under Step Four, if Plaintiff can perform past relevant work, he is not disabled. Id.

In seeking review, Plaintiff argues that the AJL's determination at Step Four is not based on substantial evidence. Specifically, Plaintiff asserts that: (1) the ALJ ignored Dr. Obuz's

conclusion that Plaintiff would need to miss at least four days of work a month; (2) the ALJ disregarded the VE's testimony that a condition requiring four or more absences a month from work would not be "compatible with the national economy; and (3) the ALJ failed to support his conclusion that Plaintiff had sufficient RFC to perform past relevant work that required him to answer the telephone. Pl.'s Br. at 12-13. The Court disagrees with each of these arguments.

First, Plaintiff's argument that the ALJ does not explain his rejection of Dr. Obuz's findings is meritless. In the context of disability eligibility determinations, the ALJ must "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citation and internal quotations omitted); see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008). "If the ALJ rejects probative evidence from a treating physician he is required to explain why." Correa v. Comm'r of Soc. Sec., 381 F. Supp. 2d 386, 395 (D.N.J. 2004) (citing Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981)).

Here, the ALJ explained his basis for rejecting Dr. Obuz's opinion that Plaintiff would be absent four or more days per month. In his decision, the ALJ discussed Plaintiff's visits to Dr. Sgarlato-Inducci and Dr. Raja, who both diagnosed Plaintiff with mild conductive hearing loss in the left ear. AR, 152-53. The ALJ also discussed Plaintiff's visits to Dr. Obuz, who concluded that Plaintiff would miss four or more days of work per month, but would still be able to walk without limitation. Id. at 15. In addition, the ALJ noted that Dr. Acuna, the state agency medical consultant, had reported that Plaintiff only had problems hearing softer sounds from his left side. Id. at 165. Furthermore, the ALJ's function-by-function analysis included a discussion of Plaintiff's daily activities and additional medical treatment not contained in the medical record.

12

After providing an overview of all of Plaintiff's medical evidence, the ALJ specifically recounted Dr. Obuz's July 15, 2008 questionnaire statements:

> Dr. Obuz indicated that the claimant[-Plaintiff] is capable of a low-stress job; has no restriction in his ability to walk or his ability to lift and/or carry; can sit for 2 hours continuously and stand for 1 hour continuously; requires a job that permits shifting positions at will; will sometimes need to take unscheduled breaks during an 8-hour workday, which will last 10 to 15 minutes; and will miss 4 or more days of work per month.[4]

AR at 15. Contrasting Dr. Obuz's opinion with the other evidence in the record, the ALJ reasoned: "Dr. Obuz's opinion in partially inconsistent with the claimant's testimony and the concessions he made in the documentary evidence, indicating that he reads, watches television and has no difficulty concentrating and *his vertigo lasts approximately 30 seconds twice per day*." Id. (emphasis added). Moreover, the ALJ continued, "[g]iven that the claimant experiences 2 vertigo attacks per day, lasting 30 seconds each, the undersigned finds that he would require approximately 2 unscheduled breaks in an 8-hour workday, lasting only a few minutes each." Id.

As this reiteration of the ALJ's reasoning reveals, Plaintiff has no basis for arguing that the ALJ failed to explain his basis for rejecting Dr. Obuz's opinion that Plaintiff would be absent four-or-more times per month. Because Dr. Obuz's opinion was deemed inconsistent with the record, the ALJ did not err in rejecting it. Indeed, the Social Security regulations provide that, for all physician opinions, "the more consistent an opinion is with the record as a whole, the more weight [an ALJ should] give to that opinion." 20 C.F.R. § 404.1527(d)(4). Moreover, the regulations provide with respect to a treating physician's opinion, that such an opinion should be given controlling weight "[i]f . . . a treating source's opinion on the issue(s) of the nature and

---

[4] As noted *supra*, Dr. Obuz handwrote the word "daily" next to the "More than four times a month" choice on the questionnaire. Neither party, nor the ALJ, addressed how to interpret this handwritten note.

13

severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in your case record* ...." Id. at § 404.1527(d)(2) (emphasis added).  Because Plaintiff's own testimony does contradict Dr. Obuz's opinion that Plaintiff would require four or more days off per month, the ALJ's rejection of Dr. Obuz's opinion was proper under these regulations.

The Court finds further support for its determination in the recent Third Circuit decision in Brown v. Astrue, where the Court of Appeals affirmed an ALJ's decision to reject a treating physician's opinion.  --- F.3d ---, No. 10-3435, 2011 U.S. App. LEXIS 13661 (3d Cir. Jul. 6, 2011). There, the ALJ found that a treating psychiatrist's opinion was outweighed by conflicting testimony provided by an impartial medical expert, as well as the record evidence of the state agency disability consultant. Id. at 7.  The Brown Court found that "as the ALJ clearly explained why she gave greater weight to the opinion of the [medical expert], her decision was supported by substantial evidence and was not contrary to law." Id.  Furthermore, the Court reiterated from its decision in Morales, supra, when "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."  Brown, 2011 U.S. App. LEXIS 13661 at *8. Just as an ALJ may reject a treating physician's opinion based on conflicting non-treating physician testimony, so too may an ALJ reject a treating physician's opinion that conflicts with the Plaintiff's own testimony.  Moreover, as noted by the Brown Court, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Id. at *9 n.2.

Plaintiff's second argument is that the ALJ improperly rejected the vocational expert's testimony that missing four days a month is incompatible with the national economy.  Since the

14

ALJ properly rejected Dr. Obuz's conclusion that Plaintiff needed to miss four or more days of work a month, the VE's testimony regarding such a restriction is irrelevant. By rejecting Dr. Obuz's medical opinion, the ALJ thereby determined that Plaintiff did not have such a limitation. Id. at 15. Thus, the ALJ did not err in determining Plaintiff's condition was compatible with the national economy.

As to Plaintiff's third and final argument, that "the ALJ does not explain how Plaintiff could perform his telephone duties" given that Plaintiff "is deaf," the Court finds this argument even less persuasive than the previous two. Pl.'s Br. at 13, 16. The Third Circuit has consistently held that an ALJ must consider medical factors in relation to specific vocational factors when making a disability determination. Baeder v. Heckler, 768 F.2d 547, 553 n.5 (3d Cir. 1985) vacated on other grounds by Baeder v. Heckler, 826 F.2d 1345 (3d Cir. 1987). An ALJ's residual functional capacity assessment must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). However, the ALJ "does not have to undertake an exhaustive review of all the evidence," but need only "indicate the evidence that supports his decision and the evidence that was rejected." Boulden v. Astrue, No. 07-4343, 2008 U.S. Dist. Lexis 56526 (D.N.J. Jul. 18, 2008) (citing Cotter, 624 F.2d at 705).

Here, the ALJ noted that Dr. Sgarlato-Inducci diagnosed Plaintiff with normal hearing in the right ear, but mild to moderate conductive hearing loss in the left. AR, 152. Dr. Obuz confirmed this diagnosis, as did Dr. Raja, who recommended additional evaluation. Id. at 158, 169. Dr. Acuna subsequently reaffirmed the previous three diagnoses. Id. at 165. Dr. Acuna also observed that Plaintiff's "allegation of an inability to hear instructions is not corroborated by the objective evidence regarding the degree of hearing loss." Id. at 166. In addition, Dr. Acuna

determined that Plaintiff's "word recognition was excellent for the right ear and good for the left ear." Id. at 13. Plaintiff is not deaf in both ears and counsel's argument before this Court that Plaintiff is "deaf" is an inappropriate mischaracterization of the evidence before the ALJ. All the medical evidence indicates that Plaintiff can hear well out of his right ear and as such, can answer a telephone. Id. at 166. Therefore, the ALJ's determination that Plaintiff still has the ability to perform past relevant work as a security guard is supported by the substantial evidence and the Court must reject Plaintiff's argument that the ALJ failed to explain how the Plaintiff could answer the telephone, as part of his duties as a security guard.

## III.     Conclusion

For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Plaintiff has not been under a disability from June 10, 2007 through September 22, 2008. Therefore, the ALJ's decision is affirmed.


Dated:          July 8, 2011

    /s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge